## In re HUNTER HOTEL ENTERPRISES, Inc.

### No. 76413.

District Court, S. D. New York.
May 1, 1941.

See, also, 44 F.Supp. 613.

Edwin M. Slote, of New York City, for debtor.

William C. Chanler, Corp. Counsel, of New York City (Sol Charles Levine and Morris L. Heath, both of New York City, of counsel), for City of New York.

HULBERT, District Judge.

Petitioner seeks to review an order of a Referee in Bankruptcy denying its motion to impress a lien.

In 1936 Markwell Operating Corp. became liable to the City of New York for sales tax in the sum of $220 based upon a transfer to it of certain furniture and fixtures by one Jacob Goldhirsch.

In 1940, the Markwell Operating Corp. transferred its assets to the debtor which assumed and agreed to pay the debts of the transferor. The City of New York taxed, as sales, the transfers of Goldhirsch to the Markwell Operating Corp., and the Markwell Operating Corp. to the debtor, which filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

The City of New York filed two claims against the debtor asserting priority. The tax imposed upon the transfer to the debtor from the Markwell Operating Corp. has been allowed as a preferred claim in the sum of $148, plus interest, and paid. The obligation of the Markwell Operating Corp. to pay the tax due upon the transfer to it by Goldhirsch and assumed by the debtor was allowed as a general claim by Referee's order dated Oct. 29, 1940. The city petitioned for a review of said order which on Dec. 10, 1940 was affirmed by Judge Mandelbaum. 44 F.Supp. 613. In his opinion he stated that his decision did not preclude the city from asserting any rights it might have to an equitable lien on the assets transferred by Markwell Operating Corp. to the debtor as a creditor of Markwell Operating Corp.

Meanwhile, in order to expedite the consideration of an arrangement, the Referee suggested or directed the debtor to deposit the sum of $220, the amount of said claim, and $65 interest thereon, in escrow. Such deposit was made with the Comptroller of the City of New York.

The City of New York opposed the confirmation of the plan at a hearing thereon January 7, 1941, in so far as it adversely affected the city's rights. According to the petitioner, the Referee stated that the city was protected by the escrow deposit and an order of confirmation was entered.

Thereafter, and before the expiration of the city's time to appeal from said order of confirmation, the city moved by petition before the Referee to impress a lien upon the assets of the debtor. This application was denied upon the ground that the court lacked jurisdiction to entertain the city's application after the entry of the order of confirmation, but regardless of the question of jurisdiction the Referee held that the city's application lacked merit in that by filing its proof of claim for taxes

616

owed by the Markwell Operating Corp., "the City with knowledge of the fraudulent transfer by Markwell to the debtor elected to file a claim for money owed by the debtor upon the basis of an assumption of Markwell's liability, and obtained allowance of its claim without priority. In doing so it made an effective election of remedies between its right to undo the transfer and its right to recover the debt from the transferee. In re Jacob Berry Co. [2 Cir.] 174 F. 409; Korns v. Thomson [& McKinnon, D.C.] 22 F.Supp. 442."

Thereupon the Referee made an order that the application for a lien be denied and that the City of New York return said sum of $285 to the debtor.

It is this order which the city seeks to review.

I am of the opinion that the Referee erred in holding that the court lacked jurisdition.

Title 11 U.S.C.A. § 769 reads as follows:

"The court shall in any event retain jurisdiction until the final allowance or disallowance of all debts, affected by the arrangement and not barred by the provisions of section 752 of this title, which—

"(1) have been proved, but not allowed or disallowed, prior to the date of confirmation; or

"(2) are disputed or unliquidated, have been scheduled by the debtor, and are proved within such time as the court may direct; or

"(3) arise from the rejection of executory contracts by the debtor and are proved within such time as the court may direct."

■ This section clearly empowers the court to determine controversies with respect to claims which have not been finally settled at the date of confirmation where there is a fund available out of which a favorable judgment might be satisfied. In re Greenpoint Metallic Bed Co., 2 Cir., 113 F.2d 881.

■ But even prior to section 769, courts of bankruptcy had jurisdiction in composition proceedings, after confirmation, to adjudicate the validity of disputed claims when they were properly filed and a deposit had been made covering the amount in dispute. In re M. D. Mirsky & Co., 2 Cir., 32 F.2d 676, certiorari denied Cady, Shapiro & Shapiro v. M. D. Mirsky & Co., 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 630; Equita-ble Holding Corp. v. Woody, 2 Cir., 63 F. 2d 751, 753; In re J. B. Pollak Co., 2 Cir., 86 F.2d 99.

■ In the case at bar the fund in dispute was placed in escrow at the suggestion or direction of the Referee. When the city objected at the hearing upon the confirmation of the plan, it claims to have been advised by the Referee that its position was protected by the deposit.

While it is true that the parties made the escrow agreement subject to determination of the review then pending before Judge Mandelbaum, it does not appear that he was aware of it. His disposition left undetermined the question of the city's right to a lien upon the assets transferred to the debtor by the Markwell Operating Corp.

I do not agree that the city's position lacked merit.

■ The Referee has ruled that the city's claim against the debtor being based upon the debtor's assumption of the Markwell Operating Corporation's liabilities bars the city from asserting a claim against the Markwell Operating Corp. or its transferred assets. The assumption and promise of the debtor to pay the debts of its transferor created an additional source to which the city could look for payment, although, of course, the city is only entitled to be paid once.

■ In Fuller v. City National Bank of Huron, S. D., D.C., 52 F.2d 865, at page 869, the court said: "A creditor who collects a portion of his claim from a third person, who after the debt is contracted agrees with the debtor to pay it, does not thereby discharge the debtor, or became estopped from collecting the balance from a surety or guarantor. There is in this no election between inconsistent claims or remedies." See, also, City National Bank of Huron, S. D., v. Fuller, 8 Cir., 52 F.2d 870, 79 A.L.R. 71; 28 C.J.S., Election of Remedies, § 10.

A more serious objection to the city's claim for an equitable lien lies in the fact that the city imposed an additional tax against the debtor on the transfer of these assets and, it is argued, elected to ratify the transfer and should not now be permitted to seek rescission of said transfer, and that if the city intended to rely on its equitable lien it should have asserted that fact at the time the transfer from the Markwell Operating Corp. to the debtor

was taxed. However, as a taxing authority, it was the duty of the city to tax every transfer of legal title regardless of other considerations. It cannot be disputed that the legal title to these assets passed to the debtor and that in order to set this transfer aside it would be incumbent upon the city to institute proceedings to this end.

It would be inequitable to permit the city, on the one hand, to tax a transfer, and on the other, institute a proceeding to set the same transfer aside, maintaining meanwhile that it is entitled to keep the sales tax imposed by it on said transfer.

Fair play requires that the city be given opportunity to finally determine which course it will choose, i. e.—retain the sales tax already collected upon the transfer from Markwell Operating Co. to the debtor, in which event it would waive its right to an equitable lien, or, if it would pursue its claim to an equitable lien and recapture in equity certain of the transferred assets, it must reduce its tax proportionately upon said transfer, said tax having already been granted priority in this proceeding. The City's Administrative Code provides for refunds of taxes paid on transfers of property subsequently set aside. Sec. N41—2.0, Schedule A(h), Ch. 41-N, New York City Administrative Code, as amended by Loc. Laws 1940, p. 355; Reg.Art. 34(a).

Accordingly, the order of the Referee is reversed and the matter is remitted to the Referee to proceed in conformity with this opinion.